CHANDLER, Justice,
for the Court.
¶ 1. A jury found Daryl Conner guilty of burglary and felony fleeing a police officer, and the Circuit Court of DeSoto County sentenced him as a habitual offender to two consecutive life sentences. Conner appealed to the Court of Appeals, which affirmed his convictions and sentences. This Court granted Conner’s petition for certiorari in which Conner argues that the evidence was insufficient to support his conviction for felony fleeing, that the trial court erred by failing to instruct the jury on the elements of larceny, and that, because the pen packs establishing Conner’s habitual-offender status were not *147 admitted at the sentencing hearing, the trial court erred by sentencing him as a habitual offender.
¶2. We affirm the judgments of the Court of Appeals and the trial court. We find that the evidence was sufficient to support Conner’s felony-fleeing conviction and that the jury was fully and fairly instructed. We further find that the pen packs establishing Conner’s status as a habitual offender were admitted at the sentencing hearing. Therefore, we affirm Conner’s convictions and sentences.
FACTS AND PROCEDURAL HISTORY
¶ 3. One morning, Mary Campbell entered her master bedroom to discover an unknown man in her home on Windersgate Drive in Olive Branch, Mississippi. The man fled from the home, entered a small, dark automobile parked in an adjacent driveway, backed his car down Winders-gate Drive to Collinswood Road, and drove off. Once the car left her sight, Campbell entered her home and called 911.
¶ 4. The 911 dispatcher relayed the description of the dark vehicle to officers in the area. Within approximately one minute of the dispatch, Officer Matthew Kinne spotted a car matching Campbell’s description of the car at the corner of Collinswood Road and Germantown Road. Officer Kinne initiated a pursuit of that vehicle, which ended when the vehicle crashed. Then, a foot pursuit ensued and officers arrested the driver.
¶5. Campbell later identified Daryl Conner from a photo lineup as the man in her home. The grand jury indicted Conner for burglary of a dwelling, felony fleeing, and petty larceny. Later, the trial court amended Conner’s indictment to charge him as a habitual offender. The jury convicted Conner of burglary of a dwelling and felony fleeing, and the trial court sentenced him as a habitual offender to serve two consecutive life sentences without the opportunity for parole.
ANALYSIS
I. Whether the State presented sufficient evidence of Conner’s identity to support his conviction for felony fleeing.
¶ 6. The Court of Appeals recognized that no witness had identified Conner as the person arrested following the pursuit. Conner v. State, No.2011-KA-00941-COA, 138 So.3d 158, 162-63, 2013 WL 1800065, *3 (Miss.Ct.App. April 30, 2013). But the Court of Appeals also found that:
[t]he short passage of time from Campbell’s report of a man in her home and the short distance from her home to the point where Officer Kinne spotted the similar vehicle and began the chase were sufficient evidence for the jury to infer that Conner was the individual who was driving the car and fled the arrest and whom Officer Kinne caught and arrested at the end of the chase.
Id. Conner argues that no reasonable juror could draw such an inference from the evidence presented at trial. Although we agree with the Court of Appeals’ conclusion that the evidence was sufficient to support the felony-fleeing conviction, we do so for a different reason.
¶ 7. On a challenge to the sufficiency of the evidence, this Court will reverse and render “if the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty....” Young v. State, 119 So.3d 309, 315 (Miss.2013) (quoting Hughes v. State, 983 So.2d 270, 275-76 (Miss.2008)). Our “relevant inquiry is *148 whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Young, 119 So.3d at 315. “This Court considers the evidence in the light most favorable to the state.” Hughes, 983 So.2d at 276 (citing Bush v. State, 895 So.2d 836, 843 (Miss.2005)). “The state receives the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Hughes, 983 So.2d at 276 (citing Wilson v. State, 936 So.2d 357, 363 (Miss.2006) (citing Hawthorne v. State, 835 So.2d 14, 22 (Miss.2003))). Likewise, the sufficiency of the evidence used to identify the accused “is primarily a question for the jury, provided the evidence could reasonably be held sufficient to comply with the requirement of proof beyond a reasonable doubt.” Passons v. State, 239 Miss. 629, 634, 124 So.2d 847, 848 (1960).
¶8. The Court of Appeals primarily relied on the proximity between the location of the burglary and where Officer Kinne spotted a vehicle matching the description provided by Campbell. This circumstantial evidence turns on the fact that Campbell last saw Conner driving down Collinswood Road, which leads only to Germantown Road, and that Officer Kinne spotted the vehicle he pursued at the corner of Collinswood and Germantown Roads approximately one minute after he received the description from dispatch.
¶ 9. But none of the evidence presented at trial established the distance Conner had to travel on Collinswood Road in order to reach Germantown Road. If that distance were, for example, 500 yards, then the jury’s verdict based upon the timing of events established by the evidence would appear reasonable. But if that same distance were ten miles, the one-minute time frame would operate against the State, and the jury’s decision would prove completely unreasonable, as no reasonable juror could infer that Conner could travel ten miles in one minute. Accordingly, in the absence of any evidence of the length of Collins-worth road, the Court of Appeals’ reliance on proximity was misplaced.
¶ 10. That said, a reasonable juror could draw a chain of inferences through the evidence presented at trial to sufficiently identify Conner as the perpetrator of the felony fleeing. Campbell identified Conner at trial as the man she had seen in her home. She also testified that she provided a description to the 911 dispatcher of a tall black man fleeing in a dark car. Officer Kinne testified that he received a description of the car and suspect from dispatch and that, after receiving that description, he began looking for a black man in a dark sedan, wearing a dark shirt.
¶ 11. At trial, the prosecution entered into evidence a video from Officer Kinne’s dashboard camera that revealed a black male, wearing a dark-colored shirt, fleeing from the dark sedan Officer Kinne pursued. A reasonable juror could conclude that the man running from the sedan was the same man described by Campbell to the dispatcher, and therefore the same man Campbell identified during trial. Accordingly, the State presented sufficient evidence to identify Conner as the perpetrator of the felony fleeing, and we affirm his conviction on that charge.
II. Whether the trial court erred by failing to instruct the jury on the elements of larceny.
¶ 12. Conner was convicted of burglary under Mississippi Code Section 97-17-23, which provides that “[ejvery person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or *149 not, with intent to commit some crime therein, shall be punished.... ” Miss.Code Ann. § 97-17-23 (Rev.2006). The trial court gave the following instruction on the elements of burglary:
In Count I, Defendant Daryl Conner has been charged with the crime of Burglary of a Dwelling.
If you find from the evidence in this case, beyond a reasonable doubt, that:
1) On or about August 18, 2007, the Defendant Daryl Conner unlawfully broke and entered;
2) The dwelling house of Billy and/or Mary Francis Campbell;
3) With the intent to commit the crime of Larceny inside the building;
then you shall find Defendant Daryl Conner guilt of Burglary of a Dwelling in Count 1.
If the State has failed to prove any one of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty in Count 1.
The trial court also instructed the jury that “[a]n inference of the intent to steal may arise from proof of the breaking and entering.”
¶ 13. Conner argues that the jury instructions were defective because the jury was not instructed on the elements of the intended crime of larceny. But he failed to request a larceny instruction at trial. Nonetheless, the issue is not proeedurally barred. The trial court must “assure that the jury is ‘fully and properly instructed on all issues of law relevant to the case.’ ” Harrell v. State, 134 So.3d 266, 270 (Miss.2014) (quoting Kolberg v. State, 829 So.2d 29, 46 (Miss.2002), overruled on other grounds. “There is no doubt that the trial court is ultimately responsible for rendering proper guidance to the jury via appropriately given jury instructions, even sua sponte.” Harrell, 134 So.3d at 270 (quoting Kolberg, 829 So.2d at 45).
¶ 14. This Court reviews jury instructions “as a whole to determine whether the jury was fully and fairly instructed according to the applicable law.” Clark v. State, 40 So.3d 531, 544 (Miss.2010). We will not find error if the instructions fairly, though not perfectly, announce the applicable rules of law. Id. The crime of burglary requires the jury to find beyond a reasonable doubt that the defendant broke and entered the dwelling house of another with the intent to commit some crime therein. Miss.Code Ann. § 97-17-23(1) (Rev.2006). This Court has held that jury instructions on burglary must identify the crime the defendant intended to commit. Daniels v. State, 107 So.3d 961, 964 (Miss.2013).
¶ 15. Conner’s jury instructions complied with Daniels by identifying larceny as the crime he intended to commit. The jury was instructed to find Conner guilty of burglary if it concluded, beyond a reasonable doubt, that Conner unlawfully broke and entered the victim’s dwelling house with the intent to commit the crime of larceny therein. The jury also was instructed that “[a]n inference of the intent to steal may arise from proof of the breaking and entering.” See Gillum v. State, 468 So.2d 856, 861 (Miss.1985) (holding that proof of breaking and entering raises a reasonable inference of an intent to steal).
¶ 16. We find that, although the jury instructions did not list the elements of larceny, they fully and fairly informed the jury of the intent requirement for burglary. The elements of larceny are the taking and carrying away of another’s personal property without consent and with felonious intent, that is, the intent to per *150 manently deprive the owner of his property. Love v. State, 208 So.2d 755, 756 (Miss.1968). The Court has described “felonious intent” as “the intent to steal.” Smith v. State, 214 Miss. 453, 59 So.2d 74 (1952). The jury instructions expressly stated that the “required intent” that the jurors had to find was “the intent to steal.” And the general lay understanding of the term “larceny” is that it connotes stealing or theft. Commonwealth v. Lawrence, 11 Mass.App.Ct. 990, 418 N.E.2d 629, 631 (1981). While the trial court should instruct the jury on the elements of the intended crime in a burglary trial, here, the jury instructions correctly instructed the jurors that they could find Conner guilty of burglary if they found he broke and entered the victim’s dwelling with the intent to steal. We find that the jury instructions fairly, although not perfectly, instructed the jury on the applicable law; therefore, we affirm Conner’s burglary conviction.
III. Whether the trial court erred by sentencing Conner as a habitual offender.
¶ 17. Prior to trial, the State moved to amend Conner’s indictment to charge him as a habitual offender under Mississippi Code Section 99-19-83, which provides for life imprisonment without parole or early release. Miss.Code Ann. § 99-19-83 (Rev.2007). During a pretrial hearing on the State’s motion, the State presented certified pen-pack records listing Conner’s prior convictions and an affidavit from Candace Whisman, Director of Sentence Management Services for the Tennessee Department of Corrections, explaining that Conner had served the necessary separate sentences of more than one year. The trial court granted the State’s motion and amended the indictment to add habitual-offender status.
¶ 18. At Conner’s sentencing hearing, the State did not produce the pen packs and affidavit. Instead, the State asked the trial court to “refer back to the record that the Defendant has been amended as a 1983 habitual offender.” The trial court asked if the defense had any objection to the “convictions that have previously been submitted in a motion to amend hearing being incorporated into this sentencing hearing by reference.” Conner did not lodge an objection to the incorporation by reference. He did object to the admission of the convictions on the grounds of hearsay and violation of his right of confrontation. The trial court overruled these objections. Conner then objected to habitual-offender sentencing as cruel and unusual punishment. The trial court found that the documents established Conner as a habitual offender under Section 99-19-83, rejected Conner’s proportionality argument, and sentenced him to life imprisonment as a habitual offender. Conner then objected to being sentenced as a habitual offender on the ground that his habitual-offender status had not been proven beyond a reasonable doubt.
¶ 19. Conner now argues that the State failed to meet its burden of proving his habitual-offender status because the pen-pack documents and affidavit (pen packs) were never introduced into evidence at the sentencing hearing. Conner’s argument is procedurally barred because he never raised it before the trial court. Clark v. State, 40 So.3d 531, 539 (Miss.2010). However, this Court may employ plain-error review if “a defendant’s substantive or fundamental rights are affected.” Grayer v. State, 120 So.3d 964, 969 (Miss.2013). A defendant has a fundamental right of freedom from an illegal sentence. Id. Because Conner argues that the State failed to submit evidence proving his habitual-offender status at the sentenc *151 ing hearing, the argument is reviewable as plain error. Grayer, 120 So.3d at 969 (defendant’s argument that the State failed to prove his habitual-offender status with competent evidence was reviewable as plain error). “To determine if plain error has occurred, this Court must determine ‘if the trial court has deviated from a legal rule, whether that error is plain, clear[,] or obvious, and whether that error has prejudiced the outcome of the trial.’ ” Id. (quoting Lafayette v. State, 90 So.3d 1215, 1220 (Miss.2012) (Carlson, P.J., specially concurring)).
¶20. When the defendant is indicted as a habitual offender, “[a] jury is to decide the question of guilt and subsequently the circuit judge is to serve as the finder of fact in determining whether the habitual offender part of the indictment is established by the requisite degree of proof.” Seely v. State, 451 So.2d 213, 215 (Miss.1984). A sentencing hearing on a defendant’s habitual-offender status must occur separately from the trial on the principal charge. URCCC 11.03. At this hearing, the elements in the applicable habitual-offender statute must be proven beyond a reasonable doubt. Davis v. State, 680 So.2d 843, 851 (Miss.1996). We have held that pen-pack records may constitute competent evidence. Taylor v. State, 122 So.3d 707, 709, 711 (Miss.2013). The defendant must be afforded a reasonable opportunity to challenge the State’s proof. Keyes v. State, 549 So.2d 949, 951 (Miss.1989).
¶ 21. “[T]he state has the same burden of proof as to the habitual offender portion of the indictment as it has on the principal charge.” Young v. State, 507 So.2d 48, 50 (Miss.1987). The defendant has the same rights at the habitual-offender sentencing hearing as at trial. Id. In Young v. State, we observed that “there appears to be some tendency to routinely allow the state to produce some documentation of prior offenses and for the trial court to perfunctorily find the defendant an habitual offender, then routinely pass out the sentence mandated.... ” Id. The Court emphasized that “a bifurcated trial means a full two-phase trial prior to any finding that the defendant is an habitual offender and subject to enhanced punishment.” Id.
¶ 22. The Court in Young reversed and rendered Young’s habitual-offender sentencing enhancement due to deficiencies in the sentencing hearing. Id. at 50. At the sentencing hearing, the State introduced documents showing Young was a habitual offender. Id. at 49. Young objected to their admission on the ground that no foundation had been laid. Id. The prosecutor referred the trial court to Young’s trial testimony, in which he had admitted the convictions. Id. at 50. The trial judge overruled Young’s objection based on his testimony from the trial. Id. This Court held that the trial court had erred by relying on trial testimony that had not been introduced at the sentencing hearing. Id. The Court stated that “the language employed by [the prosecutor] cannot be stretched so as to be considered a reintroduction of the evidence. On the contrary, it seems simply an invitation to the trial judge to rely on that evidence without having it reintroduced, which he subsequently did.” Id.
¶ 23. In Grayer v. State, 120 So.3d 964 (Miss.2013), this Court also found a habitual-offender sentence to have been based on insufficient evidence. After the State recited Grayer’s prior felony convictions and referred the trial court to the indictment, the trial court found Grayer to be a habitual offender. Grayer, 120 So.3d at 967. The State never put certified copies of the prior convictions into evidence. Id. at 969. This Court held that, because the State *152 had produced no evidence at the sentencing hearing to support Grayer’s habitual-offender status, the State had failed to prove beyond a reasonable doubt that Grayer was a habitual offender, and the trial court had erred by sentencing him as a habitual offender. Id.
¶ 24. Conner argues that the pen packs were not introduced into evidence at his sentencing hearing; therefore, the State failed to prove his habitual-offender status beyond a reasonable doubt. We disagree. The trial court expressly incorporated the pen packs into the record of the sentencing hearing and gave Conner an opportunity to object; Conner made no objection to the incorporation of the pen packs by reference. The trial court rejected Conner’s arguments against the admission of the pen packs, and then the court considered the pen packs before finding Conner to be a habitual offender. It is manifest from the trial court’s statements on the record that the trial court actually reviewed the pen packs at the sentencing hearing. The facts show that, while there was some irregularity in the manner in which the pen packs were introduced into evidence, they were, in fact, introduced into evidence. We note that the pen packs are part of the appellate record.
¶ 25. We observe that the incorporation of pen packs introduced at a prior proceeding “by reference” at a sentencing hearing is not the preferred method of introduction. See Stanford Young, Miss. Trial Handbook for Lawyers § 22:2 (3d ed.2013) (stating that “an attorney seeking to admit a document into evidence should identify it and have the reporter mark it for record identification”). The record of a sentencing hearing should clearly and unambiguously reflect the admission of habitual-offender evidence. This saves the appellate court from the task of combing the record to ascertain whether the State’s proof actually was admitted at the sentencing hearing. But here, unlike in Young and Grayer, the State’s evidence supporting Conner’s status as a habitual offender was admitted at the sentencing hearing. Therefore, no error occurred, and this issue is without merit.
¶ 26. Finally, we address Justice Kitchens’s argument that Conner’s Sixth Amendment right of confrontation was violated by the admission of Whisman’s affidavit. We have not held that Confrontation-Clause guarantees exist during sentencing, even if sentencing occurs under our habitual-offender statutes. Holland v. State, 705 So.2d 307, 328 (Miss.1997); but see Pitchford v. State, 45 So.3d 216, 252 (Miss.2010) (applying the Confrontation Clause to jury sentencing). The Supreme Court of the United States has held that the Confrontation Clause does not apply during the sentencing process. Williams v. Oklahoma, 358 U.S. 576, 583-84, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); Williams v. New York, 337 U.S. 241, 246-251, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Post-Crawford, the federal circuit courts continue to apply Williams and do not recognize a right to confrontation during sentencing proceedings. Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 (2004); see, e.g., United States v. Beydoun, 469 F.3d 102, 108 (5th Cir.2006). In light of the fact that this Court has not determined that the Confrontation Clause applies to sentencing proceedings, and Conner does not raise this issue on appeal, we decline to find that the admission of Whisman’s affidavit was plain error. We affirm the judgments of the Court of Appeals and the DeSoto County Circuit Court.
¶ 27. COUNT I: CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPART *153 MENT OF CORRECTIONS AS AN HABITUAL OFFENDER, WITHOUT THE ELIGIBILITY FOR PAROLE, AFFIRMED. COUNT III: CONVICTION OF FELONY FLEEING AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY TO ANY SENTENCE CURRENTLY BEING SERVED. APPELLANT SHALL PAY COURT COSTS AND A FINE OF $1,000.00 WITH CONDITIONS AND SHALL BE GIVEN CREDIT FOR 349 DAYS FOR TIME SERVED.
WALLER, C.J., RANDOLPH, P.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY KITCHENS AND KING, JJ., KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.